```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION


ANITA R. SIMMONS,                       :
                                        :
     Plaintiff,                         :
                                        :
vs.                                     :
                                        :   CIVIL ACTION 12-0700-M
CAROLYN W. COLVIN,                      :
Commission of Social Security,[1]       :
                                        :
     Defendant.                         :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits (Docs. 1, 16). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22). Oral argument was waived in this action. Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

---

[1]Carolyn W. Colvin became the Commissioner of Social Security on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin is substituted for Michael J. Astrue as Defendant in this action. No further action needs to be taken as a result of this substitution. 42 U.S.C. § 405(g).

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty-four years old, had completed a high school education[2] (Tr. 41), and had previous work experience as a certified nursing assistant and seafood packer (Tr. 41). In claiming benefits, Plaintiff alleges disability due to depression, mild postoperative arthritis in the knees, mild chondromalacia of the patella in the left knee with a possible torn medial meniscus, status post left carpal tunnel syndrome, and right carpal tunnel syndrome (Doc. 16 Fact Sheet).

The Plaintiff filed protective applications for disability insurance benefits, Supplemental Security Income (hereinafter

---

[2]**Error! Main Document Only.**Plaintiff testified that she had received a Graduate Equivalency Degree (Tr. 41).

*SSI*), and Widow's disability benefits on June 5, 2009 (Tr. 134-44; *see also* Tr. 20). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined, briefly, that Simmons was not disabled prior to March 1, 2011 but became disabled as of that date, her fifty-fifth birthday, and was entitled to disabled widow's benefits and SSI (Tr. 20-31). Plaintiff requested review of the hearing decision (Tr. 5-14) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Simmons alleges the single claim that the ALJ did not accord proper consideration to the conclusions of her treating physician (Doc. 16). Defendant has responded to—and denies—this claim (Doc. 17). The relevant[3] evidence of record, briefly, is as follows.

Records from the Internal Medicine Center from March 18, 2009 through December 30, 2009 show that Dr. Donald Sanders treated Simmons for a variety of medical ills including leg pain, burning feet, hypertension, headaches, allergies, and congestion (Tr. 337-62). On January 22, 2010, Plaintiff underwent an NCV of the bilateral lower extremities that identified no abnormalities (Tr. 358).

On July 14, 2009, Orthopaedic doctor, William A. Crotwell,

---

[3]The Court will only review the evidence that is relevant to the particular claim raised by Simmons for the time period during which she has asserted disability.

3

III, examined Simmons for complaints of increased pain in both knees (Tr. 276; *see generally* Tr. 276-84, 304-36).  An x-ray showed joint space narrowing medially with minimal arthritis in the right knee; the left knee showed some joint space narrowing medially with some mild patellofemoral arthritis.  The diagnosis was mild chondromalacia of the patella, with probable torn medial meniscus and a positive McMurray, of the left knee.  Dr. Crotwell prescribed Mobic[4] and Lortab[5].  On August 3, 2009, following an MRI, Dr. Crotwell noted that Simmons had an inferior tear of the medial meniscus of the left knee; he indicated that it was not severe and that conservative treatment, including physical therapy, medication, and possible injections, was the best way to proceed (Tr. 277).  On August 31, Plaintiff indicated that her pain was no better and that she wished to proceed with the arthroscopy (Tr. 278).  On September 25, Dr. Crotwell performed the surgery and discharged Simmons with exercises to do and prescriptions for Lortab, Tylox[6], and Keflex[7] (Tr. 282).  On October 1, the doctor noted minimal

---

[4] **Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[5] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[6] **Error! Main Document Only.**Tylox, a class II narcotic, is used "for the relief of moderate to moderately severe pain".  *Physician's Desk Reference* 2217 (54th ed. 2000).

[7] **Error! Main Document Only.***Keflex* is used for the treatment of various

4

swelling and that left knee movement was good; Relafen[8] was prescribed and Simmons was to begin physical therapy (Tr. 283). A prescription for Darvocet[9] was provided on October 14, 2009 (Tr. 307). On October 29, Dr. Crotwell noted increased range of movement (hereinafter *ROM*), from 0 to 110, in the left leg with no swelling present; physical therapy reports indicated that Simmons had some pain and weakness (Tr. 308). Crotwell prescribed Lodine[10] and more physical therapy; he encouraged more activity. On December 17, an ultrasound of the lower left leg revealed no evidence of deep vein thrombosis; on that same day, Simmons complained of pain and tightness in the knee, so she was given a cortisone shot (Tr. 315, 317).

On February 11, 2010, Dr. Crotwell examined Plaintiff for complaints of pain in her left knee; the doctor found no major swelling, no crepitance, and that the knee was nontender (Tr. 373). An injection was given and Simmons was told to remain on the Darvocet and Relafen. On February 26, Plaintiff complained of pain in her right thumb and wrist; Crotwell noted popping and

---

infections. *Physician's Desk Reference* 854-56 (52nd ed. 1998).

[8]**Error! Main Document Only.***Relafen* "is indicated for acute and chronic treatment of signs and symptoms of osteoarthritis and rheumatoid arthritis." *Physician's Desk Reference* 2859 (52nd ed. 1998).

[9]**Error! Main Document Only.**Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation. *Physician's Desk Reference* 1443-44 (52nd ed. 1998).

[10]**Error! Main Document Only.**Lodine is "indicated for acute and long-term use in the management of signs and symptoms of osteoarthritis and rheumatoid arthritis. Lodine is also indicated for the management of pain." *Physician's Desk Reference* 3062-64 (52nd ed. 1998).

triggering of the thumb (Tr. 372). X-rays were normal; the thumb was injected and splinted.

On February 18, 2010, Dr. Sanders completed a form in which he stated that Simmons had pain from arthritis that would keep her from adequately performing daily activities or work (Tr. 385-86). He further indicated that physical activity would cause an increase in pain but would not prevent adequate functioning of whatever task she was performing; Sanders further found that her pain, or the side effects from her medications, would limit her effectiveness at work. The doctor found, however, that there were no restrictions in her daily activities. Finally, Sanders stated that Simmons was unable to work "based on the persistence of [her] complaints" (Tr. 386).

On February 24, 2010, Dr. Crotwell completed a pain form in which he indicated that Simmons had mild post-operative arthritis that caused pain, but that it did not prevent every day functioning (Tr. 370-71). The Orthopaedic further stated that physical activity would increase Plaintiff's pain but not to the extent that it would prevent adequate functioning of those activities; Crotwell also indicated that Simmons's pain would not keep her from working an eight-hour workday, five days a week.

On January 11, 2010, Dr. Sanders examined Plaintiff who was complaining of neuropathy, pain, headaches, and confusion (Tr.

6

402; *see generally* Tr. 387-407). Two weeks later, there were complaints of burning in her feet and headaches; blood pressure was noted to be elevated (Tr. 400-01). On February 18, Simmons was light-headed and had been having headaches; she also complained of a back problem and a problem with her toes for which she was given Neurontin[11] (Tr. 399). On May 20, 2010, Simmons complained of foot and back pain (Tr. 396); an x-ray of the left foot was normal (Tr. 407). On September 1, Plaintiff stated that she had been experiencing numbness, off and on, in her left arm and hand (Tr. 393). On November 3, Simmons complained of pain and swelling in her hands; Dr. Sanders noted that they looked arthritic, consistent with osteoarthritis (Tr. 387-88). The Lortab prescription was re-written. X-rays of both hands were normal (Tr. 406).

On January 3, 2011, Plaintiff was seen by Dr. Ben Freeman, of The Orthopaedic Group, for pain and swelling of the right hand; Simmons demonstrated triggering of the left thumb and ring finger (Tr. 408; *see generally* Tr. 408-13). X-rays showed mild degenerative changes; the doctor put her on a Medrol Dosepak. On January 25, nerve conduction studies were performed, showing left median neuropathy at the wrist, consistent with carpal tunnel syndrome; the right wrist was essentially normal (Tr.

---

[11]**Error! Main Document Only.***Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

7

413).  On February 18, 2011, Simmons had carpal tunnel release surgery on her left hand (Tr. 410, 414-15).  On March 15, Plaintiff began three weeks of occupational therapy to treat carpal tunnel release and trigger finger release (Tr. 416).

In her determination, the ALJ found that Plaintiff was unable to perform any of her past relevant work, but that there were specific light work jobs that she could perform (Tr. 20-31).  In reaching this decision, the ALJ found that Simmons's statements concerning her pain and limitations were not credible in that they were not as severe as alleged (Tr. 27, 28-29); Plaintiff has not challenged that finding in this action.  The ALJ gave significant weight to the conclusions of Dr. Crotwell while giving little weight to those of Dr. Sanders (Tr. 26-27).  The ALJ also adopted the conclusions of the Vocational Expert who testified at the evidentiary hearing of specific jobs that a hypothetical individual with Simmons's residual functional capacity and vocational characteristics could perform (Tr. 30); Plaintiff has not challenged this finding either.

This concludes the summary of the medical evidence.

Plaintiff's only claim is that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of Plaintiff's treating physician, Dr. Sanders (Doc. 16).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than

8

the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[12] *see also* 20 C.F.R. § 404.1527 (2013).

In rejecting Dr. Sanders's conclusion that Simmons was unable to work, the ALJ noted that the doctor had cited as his reason for reaching that decision the persistence of Plaintiff's complaints; the ALJ noted that this was evidence of Sanders's reliance on her statements rather than the objective medical evidence (Tr. 27; *cf.* Tr. 386). The ALJ also noted the inconsistency of Sanders's conclusions on the pain form in that he found that Simmons had no restrictions of daily activities but could not work (*id.*). The ALJ also stated that he gave weight to Crotwell's conclusions over those of Sanders because Crotwell was a specialist (Tr. 27). The Court would also note that Dr. Sanders's treatment notes do not support a conclusion that Plaintiff was unable to work. The Court finds substantial evidence to support the ALJ's determination that Dr. Sanders's conclusions were not to be given much weight.

Simmons has raised a single claim in bringing this action. That claim is without merit. Upon consideration of the entire

---

[12] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 27th day of June, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE